**J. Thomas CHESS et al., Plaintiffs,**

v.

**Arthur NIEPORT et al., Defendants.**

**Civ. No. S-2538.**

United States District Court, E. D. California.

Dec. 27, 1974.

Richard H. Cooper, Freshman, Murantz, Comsky & Deutsch, Beverly Hills, Cal., for plaintiffs.

Frank B. Myers, Bodkin, Breslin & Luddy, Los Angeles, Cal., for defendants Nieport and Connell.

Harvey Fierstein, Los Angeles, Cal., for defendant Kier.

Richard K. Park, Dahl, Hefner, Stark, Marois & James, Sacramento, Cal., for defendant Mid Valley Title & Escrow Co.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

This action was brought under section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b) (hereinafter section 10(b)), section 17 of the Securities Exchange Act of 1933 (15 U.S.C. § 77q) (hereinafter section 17), and Rule 10b-5 (17 C.F.R. § 240.10b-5) to secure damages and other relief for alleged violations of these securities acts and the common law. The gravamen of the plaintiffs' allegations is that the defendants conspired to enter into and did enter into a common scheme to defraud and deceive the three groups of plaintiffs-purchasers in a series of real estate transactions, and to thereby deprive the plaintiffs of money and property. It is alleged that the defendants formed a deliberate design and purpose to sell to each group of plaintiffs-purchasers certain real property at prices much greater than their value and to obtain secret profits and commissions. The plaintiffs also allege that each of them was induced to execute promissory notes and deeds of trust in favor of the defendants in connection with the real property transactions.

In order to assist in an understanding of the issues presented below a brief description of the scheme as alleged by the plaintiffs is provided. The defendants are alleged to have made the following false representations to each group of plaintiffs-purchasers: (1) the defendants had located a seller of real property suitable for investment; (2) the transaction would involve a simple purchase and sale between the owner of the real property and each group; (3) the defendants would be receiving no other real estate broker's commission or profits on the transaction other than those disclosed to each group; (4) the property was an excellent property with a fair market value in excess of the purchase price. The plaintiffs claim that the owners of the real property in question engaged some of the defendants as real estate brokers to sell certain tracts of land. These defendants then offered a portion of each tract of land to each group of plaintiffs-purchasers for the same price the owners of the land had placed on the entire tract. By the use of strawmen and multiple escrows the defendants were able to simultaneously purchase the larger tract from the owner and sell a portion of each tract to each group of plaintiffs-purchasers, thereby retaining for themselves a portion of the real property in each transaction as a secret profit. The plaintiffs also allege that as part of the scheme the defendants misrepresented the fair market value of the real property sold to each group and also misrepresented to

them that the real property was a "good investment".

The case is now before the court on several motions made by certain of the defendants and by the plaintiffs. The court need not reach all the motions of the parties, because the motion to dismiss for lack of subject matter jurisdiction made by the defendant Mid Valley Title and Escrow Company (hereinafter Mid Valley) is dispositive of the case.

■ Before discussing Mid Valley's motion to dismiss, however, the court must dispose of the plaintiffs' motion to dismiss their claim under Section 17 of the 1933 Securities Act. Rule 41(a)(2) of the F.R.Civ.P. empowers this court to order a claim for relief dismissed where the motion has been made by the plaintiff subsequent to the answer or a motion for summary judgment by the defendant.

> "The purpose of Rule 41(a)(2) 'is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.' Accordingly the courts have generally followed the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. It is not a bar to dismissal that plaintiff may obtain some tactical advantage thereby. (footnotes omitted)." Wright & Miller, 9 Federal Practice & Procedure § 2364.

The instant Rule 41 motion for dismissal comes at an early stage of the lawsuit and the court is unable to find that any of the defendants will suffer a "plain legal prejudice" by the granting of the motion. The plaintiffs' motion for dismissal of their section 17 claim is hereby granted.

The thrust of Mid Valley's motion is that the execution of promissory notes and deeds of trust by each of the plaintiffs-purchasers to help finance each of the separate land transactions was not a "purchase or sale" within the meaning of the Securities Acts. The Ninth Circuit has reached this issue only once in Llanos v. United States, 206 F.2d 852 (9th Cir. 1953) (hereinafter *Llanos*). The *Llanos* court held that promissory notes were securities and that:

> "The securities were disposed of for value in the transactions involved, and hence the transactions are covered by the broad definition of the statute [Securities Act of 1933]. (citation omitted). *Id.* at 854.

However, the facts in *Llanos* distinguish that case from the instant case. There the defendants obtained money for their own use from the "dupes" by falsely representing to them that the money obtained from them would be bet on a "fixed" volleyball game. As part of the scheme the defendants gave their victims 60 to 90 day "promissory notes" in exchange for their money. Although cast in terms of a "promissory note", the transaction in *Llanos* actually resembled an investment contract, since the victims were purchasing an opportunity to share in the profits of the fixed volleyball game. The victims expected their investment to yield profits from a betting scheme rather than a return of interest on the money they had given as consideration for the promissory notes in question. Thus, the *Llanos* court correctly concluded that the promissory notes were securities that had been disposed of for value.

■ The Supreme Court has held that the courts must approach a determination of whether there has been a "purchase or sale" within the Securities Act of 1934 on a case by case basis. SEC v. National Securities, 393 U.S. 453, 466–467, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). The courts must look to see whether the alleged conduct is the type of fraudulent behavior that Congress intended to forbid. *Id.* In the instant case the court is presented with a land sales transaction involving allegations of fraud and misrepresentation. The "crux" of this transaction was not the sale of an investment security, i. e. the giving of a promissory note in return

for money as a part of a scheme to encourage victims to invest in a money venture as was the case in *Llanos*. Here the promissory notes were exacted from the victims rather than the promotor and they were executed and delivered only as an incident to a double-barreled scheme to skim fraudulently concealed profits from a real estate transaction and to fraudulently misrepresent the value of real estate in order to encourage its purchase. I cannot find, under the circumstances of this case, where the alleged victims in a fraudulent real estate transaction give a promissory note which is secured by a deed of trust on existing land, the promotors of the allegedly fraudulent scheme are thus involved in the sale of a security within the meaning of the Securities Exchange Act. I do not believe Congress intended to regulate such transactions by the enactment of the Securities Acts. For the reasons stated, the court must hold that the *Llanos* decision is inapposite and that the court does not have subject matter jurisdiction in this case. This opinion does not, however, stand for the proposition that a land sales financing arrangement could never give rise to a federal claim under the Securities Acts. *See* Hannan & Thomas, The Importance of Economic Reality and Risk In Defining Federal Securities, 25 Hastings Law Journal 219, 274–277 (1974).

The plaintiffs' pendent state claims for common law fraud must also fail, since their federal claims are being dismissed prior to trial. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

For the reasons stated above the court hereby grants the plaintiffs' motion to dismiss their claims under Section 17 of the 1933 Securities Act and the defendant Mid Valley's motion to dismiss the entire action.

It is so ordered.