**UNITED SPORTFISHERS, a California Corporation, et al., Plaintiffs,**

v.

**Pete J. BUFFO, an Individual, et al., Defendants.**

**Civ. No. 75–0133–GT.**

United States District Court, S. D. California.

May 22, 1975.

John L. Kearney, Jr., Miller & Kearney, San Diego, Cal., for plaintiffs.

Robert B. Coffin, Luce, Forward, Hamilton & Scripps, Morris Sankary, Sankary & Sankary, and Herman A. Hauslein, San Diego, Cal., for defendants.

## ORDER

GORDON THOMPSON, Jr., District Judge.

The defendants brought the instant motion to dismiss pursuant to the provisions of Rule 12(b) of the Federal Rules of Civil Procedure. Specifically, the defendants contend that this court lacks jurisdiction over the subject matter and must, therefore, dismiss the amended complaint.

The plaintiffs seek to invoke the admiralty jurisdiction of this court, proceeding under 28 U.S.C. § 1333. The plaintiffs also urge that the underlying transaction gives rise to a cause of action for certain violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.

For the reasons set forth below, this court concludes that the instant complaint must be dismissed for lack of federal jurisdiction.

Briefly, the allegations in the complaint arise out of an agreement between the plaintiffs and the defendants to exchange two parcels of real property located in Utah, together with contracts to purchase said properties and an assignment of the rights to the proceeds under the same, for two sportfishing vessels, the Malihini and the Mascot IV. While the plaintiffs were to receive title to the parcels in question, in effect, they were holding title until they received the proceeds from the land sale contracts in exchange for the two vessels.

The vessels were encumbered by first preferred ships' mortgages held by two banks. During the course of the transaction, the plaintiffs advanced $1,000 to the defendants in return for a promissory note for that amount secured by a second ship's mortgage on the vessels. The plaintiffs attempt to invoke the admiralty jurisdiction of the court by foreclosing upon this second mortgage.

The ship-mortgage sued upon in the instant proceeding does not qualify as a "preferred" ship-mortgage within the provisions of Title 46 U.S.C. § 922. In order to obtain the "preferred" status conferred by 46 U.S.C. § 953, the mortgage must satisfy the conditions enumerated in Section 922 of Title 46.

A preferred sip-mortgage exists if, *inter alia:*

(1) The mortgage is endorsed upon the vessel's documents in accordance with the provisions of this section;

(2) The mortgage is recorded as provided in section 921 of this title, together with the time and date when the mortgage is so endorsed . . . .  46 U.S.C. § 922.

In Detroit Trust Co. v. The Thomas Barlum, et al., 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934), Chief Justice Hughes, speaking for the Court, held that if a ship-mortgage was preferred, within the terms of the Ship Mortgage Act of 1920, the district courts have exclusive original jurisdiction. The Court stated:

> If a mortgage is within the Act, there can be no suit to foreclose it in a state court; if the mortgage is not within the Act, there can be no suit for foreclosure in the admiralty. It cannot be doubted that the Congress recognized the importance of basing the jurisdiction, as thus sought to be conferred, upon precise statutory conditions. *Id.* at 42, 55 S.Ct. at 37.

The ship-mortgage in the instant proceeding does not qualify for the status of a preferred ship-mortgage, within the provisions of the Ship Mortgage Act. The mortgage was not endorsed upon the vessels' documents, nor was it recorded as prescribed by the statute. Because the aforementioned conditions of Section 922 of Title 46 U.S.C. were not satisfied, the second ship-mortgage cannot serve as a basis for invoking this court's exclusive admiralty jurisdiction. The court lacks jurisdiction to proceed under the admiralty clause of Title 28 U.S.C. § 1333.

In the alternative, the plaintiffs assert that federal jurisdiction, premised upon certain alleged violations of the Securities Exchange Act of 1934, lies in this court. The plaintiffs urge that the proposed sale of certain promissory notes constitutes a transaction in "securities" within the meaning of the Act.

Assuming that a proposed sale may be within the provisions of Section 10(b) of the Securities Exchange Act of 1934, this court concludes that the promissory notes herein are not "securities" under the Act. The term "security" as defined by the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), encompasses, unless the context otherwise requires, the following:

> [A]ny note . . . investment contract . . . or in general, any instrument commonly known as a 'security' . . . but shall not include . . . any note . . . which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

The Securities Act of 1933 and the Securities Exchange Act of 1934 are to be construed liberally in order to effectuate their remedial purposes. S.E.C. v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476 (9th Cir. 1973). The acts are to be interpreted consistently with the intent of Congress—preventing the exploitation of the public through speculative and/or fraudulent devices. El Khadem v. Equity Securities Corporation, 494 F.2d 1224, 1227 n. 7 (9th Cir. 1974).

When interpreting the meaning of the word "security", the Supreme Court has stated that "form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). A literal construction of the Act should not be employed to expand the scope of the securities legislation to encompass transactions and instruments that are not of an investment nature. Likewise, a literal interpretation of the Act cannot be sanctioned where such a reading would frustrate the intent of Congress.

While there is authority for treating the notes in this transaction as "securities", the court is not inclined to adopt such an expansive reading of the term. *But see* Llanos v. United States, 206 F.2d 852 (9th Cir. 1953). Rather, the approach adopted by the Fifth Circuit, emphasizing the economic realities, will be followed by this court in this instance.

In McClure v. First National Bank of Lubbock, Texas, 497 F.2d 490 (5th Cir. 1974), the court concluded that the Securities Acts were to be applied to

notes that were of an "investment" character, while notes which reflected a "commercial" loan transaction were beyond the purview of the legislation. In holding that notes issued in an individual commercial transaction were not within the provisions of the Securities Exchange Act of 1934, the court, in Bellah v. First National Bank of Hereford, Texas, 495 F.2d 1109, 1114 (5th Cir. 1974), noted:

> We doubt that Congress intended by [the Securities Acts] to render federal judges the guardians of all beguiled makers or payees. Where, as here, complaints are spawned by a commercial loan transaction, recourse must be had to state not federal courts.

The nature of the offering and the use of the proceeds are useful considerations in determining the "investment" character of the notes. Where the notes are nothing more than part and parcel of a commercial financing venture, as is the case here, the notes are not securities within the ambit of the statutes.

Finally, the plaintiffs would urge that the land sale contracts in the instant transaction are "securities" within the meaning of the Securities Exchange Act of 1934. If these land sale contracts are "investment contracts", this court has jurisdiction to entertain the action under the provisions of the Act.

In S.E.C. v. Howey Co., 328 U.S. 293, 298, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1945), the Court defined an "investment contract" as follows:

> A contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . .

However, in S.E.C. v. Glenn W. Turner Enterprises, Inc., *supra* at 482, the Ninth Circuit modified the test under *Howey,* stating:

> [T]he word 'solely' should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities.
>
> . . . Rather we adopt a more realistic test, whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.

The Ninth Circuit further refined the Supreme Court definition of an "investment contract" by defining a "common enterprise" as a scheme or transaction in which the investor's capital is comingled with those who sought the investment or of third parties, and the prospects for financial gain or loss are determined by the efforts of those parties. *Id.* at n. 7.

If a "common enterprise" does not entail a fluctuation of economic gain due to the managerial skills of others, it may, nevertheless, be characterized as an investment contract where the risk of loss may vary dependent upon management's skills. *See* El Khadem v. Equity Securities Corp., *supra.*

This transaction did not involve a general offering to the public, nor were the promoters or other parties engaged in the development and/or marketing of these parcels. The transaction lacks the requisite investment character. At a certain point, a simple real estate transaction may be metamorphosed into an "investment contract" with all the incidents of a "security", but such is not the case here. The distinction is illustrated by the following comment:

> The line is drawn . . . where neither the element of a common enterprise nor the element or reliance on the efforts of another is present. For example, no 'investment contract'

**314**

is involved where a person invests in real estate, with the hope perhaps of earning a profit as the result of a general increase in values concurrent with the development of the neighborhood, as long as he does not do so as part of an enterprise whereby it is expressly or impliedly understood that the property will be developed or operated by others. 1 Loss, Securities Regulation 491–492 (2d ed. 1961).

Rather than being an investment contract, the underlying agreement pertains solely to an exchange of two vessels for two parcels of real estate, together with an assignment (to the plaintiffs) of the right to the proceeds from two land sale contracts transferring the respective parcels. This agreement is not the "common enterprise" envisioned by the Court in *Howey*. Moreover, this court is unable to isolate any "essential managerial efforts" by the promoters or other parties that would affect the value of the transaction or the potential for financial gain.

Under these circumstances, to hold these land sale contracts to be "investment contracts" would do much to bring all commercial real estate transactions, along with their attendant fees, easements, servitudes, covenants, etc., within the ambit of the Securities Acts. Surely, Congress did not intend such a result. The land sale contracts in this transaction are not "investment contracts" and will not suffice to confer jurisdiction on this court under the Securities Acts.

In sum, this court must conclude that the plaintiffs cannot prosecute the instant cause of action in this court. Jurisdiction is lacking under the admiralty clause of Title 28 and under the provisions of the Securities Exchange Act of 1934. The plaintiffs are entitled to their day in court, but it will be another day and in another court. The defendants' motion to dismiss is hereby granted.