597 F.2d 658
 Fed. Sec. L. Rep. P 96,708
 UNITED SPORTFISHERS, a California Corporation, California
Sport Fishing Corporation, a California Corporation, San
Diego Recreoceanal Equipment, Inc., a California
Corporation, Ralph Gano Miller, Jr., an individual, and
Jeanne W. Miller, an Individual, Plaintiffs,
v.
Pete J. BUFFO, an Individual, W. C. Ogle, an Individual,
Preston Kerr, an Individual, Millis E. Carr, an Individual,
Paul B. Stanley, an Individual, Lawrence C. Wall, an
Individual, John Cameron Davis, an Individual, William E.
Miller, an Individual, Don Lake, an Individual, Ute-Cal Land
Development Corporation, Cal-Ute Oil Company, Stanley
Abstract & Title Company, Title Insurance of Minnesota,
Charisma Petroleum Corp., d/b/a Charisma Oil Co., Compu-Tek,
Graphicon Industries, Inc., Berkroy Development Co., Inc.,
James Mack, an Individual, Evans-Mansfield Corp., Property
Escrow Co., Pinon Ridge Land Company, Gil Reimer, an
Individual, Jeff Hanscom, an Individual, and the vessels
Mascot IV and Malihini, Official Nos. 297291 and 265205,
their engines, apparel, fixtures, tackle, gear, etc., Defendants.
 
 No. 75-2475.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 6, 1978.
 Thomas M. Monson (argued), San Diego, Cal., for plaintiffs.
 Susanne J. Stanford (argued), San Diego, Cal., for defendants.
 Appeal from the United States District Court for the Southern District of California.
 Before CHOY and ANDERSON, Circuit Judges, and PALMIERI*, District Judge.
 CHOY, Circuit Judge:
 
 
 1
 The sellers of two sportfishing vessels appeal from the dismissal of their action brought under the federal securities acts. The district court determined that it lacked subject matter jurisdiction because the land sale contracts and promissory notes given as consideration for the sale were not "securities" within the meaning of the securities acts. 396 F.Supp. 310, 313-14 (S.D.Cal.1975). We affirm.
 
 I. Statement of the Case
 
 2
 In August, 1974, United Sportfishers (United) entered into a written agreement with W. C. Ogle whereby United agreed to sell Ogle two sportfishing vessels. This agreement was amended on October 20, 1974, to include Preston Kerr and Pete J. Buffo as purchasers. Ogle, Kerr, and Buffo agreed to make a cash payment and to assign the proceeds of two land sale contracts owned by Ogle and the Pinon Ridge Land Company, which he apparently controlled. The assignment was made on October 23, 1974, possession of the two vessels passing to Ogle, Kerr, and Buffo the next day.
 
 
 3
 Because Ogle, Kerr, and Buffo were unable to provide title insurance for the land, it appeared as though the assignment to United would be rendered valueless and the boat sale would not be completed. In an attempt to salvage the boat sale and the land sale upon which it was dependent, Miller entered into a "Note Sale Agreement" with Buffo and a corporation which Buffo apparently controlled. Miller agreed, Inter alia, to forbear from suing on the land sale contracts. In return, Buffo and the corporation agreed to transfer to Miller their beneficial interest in seven promissory notes secured by real property deeds of trust.
 
 
 4
 Nonetheless, shortly after this agreement, Miller, United, and other parties connected with the boat sale filed their action. They alleged that Buffo and the corporation lacked a beneficial interest in the notes and deeds of trust so that the "Note Sale Agreement" was invalid. They also alleged that Ogle and Pinon never owned the land purportedly conveyed in the land sale contracts, that their failure to furnish title insurance was a breach of those contracts, and that the contracts were invalid when assigned to United. They contend that the land sale contracts and promissory notes are "securities" within the meaning of the federal securities acts and that issuance of those securities violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.II. Definition of "Security"
 
 
 5
 Section 3(a) of the 1934 Act, 15 U.S.C. § 78c(a) provides in relevant part:
 
 
 6
 When used in this chapter, unless the context otherwise requires
 
 
 7
 (10) The term "security" means any Note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any . . . mineral royalty or lease, any collateral-trust certificate, . . . subscription, transferable share, Investment contract, voting-trust certificate, certificate of deposit, for a security . . . .
 
 
 8
 (emphasis added). Notwithstanding the generality of the language, the Supreme Court has concluded that "the context" underlying security regulation under the 1934 Act indicates that "security" should be limited to investments and not other commercial dealings. In United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court rejected a claim that "stock" that had to be purchased as a precondition to obtaining an apartment in a government-subsidized housing project constituted an "investment contract" within the meaning of the 1933 Securities Act.[1] The Court wrote:
 
 
 9
 (T)he basic test for distinguishing (a security) transaction from other commercial dealings is
 
 
 10
 "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." Howey, 328 U.S., at 301, 66 S.Ct. 1100.
 
 
 11
 This test . . . embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits, the Court has meant either capital appreciation resulting from the development of the initial investment . . . or a participation in earnings resulting from the use of investors' funds . . . .
 
 
 12
 Id. at 852, 95 S.Ct. at 2060 (footnote omitted). The Court concluded:
 
 
 13
 What distinguishes a security transaction and what is absent here is an investment where one parts with his money in the hope of receiving profits from the efforts of others . . . .
 
 
 14
 Id. at 858, 95 S.Ct. at 2063. See SEC v. W. J. Howey Co., 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); United California Bank v. THC Financial Corp., 557 F.2d 1351, 1356-59 (9th Cir. 1977); SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 480-83 (9th Cir.), Cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).
 
 
 15
 Consistent with the Forman test limiting "security" to investments, we have limited the apparently general term "note" in § 3(a)(10) to notes taken as investments. United California Bank, 557 F.2d at 1356-58; Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1256 (9th Cir. 1976).
 
 
 16
 In this case, the notes and land sale contracts given as consideration for the two boats were not "investments." United did not "invest" in the land sale contracts and notes with the hope of securing the promised return through growth of an enterprise resulting from the use of investors' funds. There was no expectation that appellees would contribute managerial skill to enhance the value of the land or of appellants' holdings. As the court below concluded:
 
 
 17
 (T)o hold these land sale contracts to be (securities) would do much to bring all commercial real estate transactions . . . within the ambit of the Securities Acts. Surely, Congress did not intend such a result.
 
 
 18
 396 F.Supp. at 314.[2] Following the teaching of the Supreme Court in Forman,[3] we refuse to apply the federal securities laws to non-investment commercial dealings as are concerned in this case.[4] See Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 428 (9th Cir. 1978).
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Both this court and the Supreme Court have noted that the statutory definition of "security" in the Securities Act of 1933 is "virtually identical to that contained in the 1934 Act. Consequently, we are aided in (interpreting the 1934 Act definition) by our prior decisions which have considered the meaning of security under the 1933 Act." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). See Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 431-32 (9th Cir. 1978); United California Bank v. THC Financial Corp., 557 F.2d 1351, 1356 (9th Cir. 1977)
 
 
 [2]
 Professor Loss has noted:
 The line is drawn . . . where neither the element of a common enterprise nor the element of reliance on the efforts of another is present. For example, no "investment contract" is involved where a person invests in real estate, with the hope perhaps of earning a profit as the result of a general increase in values concurrent with the development of the neighborhood, as long as he does not do so as part of an enterprise whereby it is expressly or impliedly understood that the property will be developed or operated by others.
 
 
 [1]
 L. Loss, Securities Regulation 491-92 (2d ed. 1961). See United Sportfishers v. Buffo, 396 F.Supp. 310, 313-14 (S.D.Cal.1975)
 
 
 [3]
 Our reluctance to expand the definition of "security" is reinforced by the Supreme Court's recent decisions refusing to extend the reach of federal securities fraud so as to supplant, in effect, state regulation with a federal common law of corporations. See, e. g., Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 478-80, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 747-48, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); Comment, 89 Harv.L.Rev. 1917, 1929 (1976)
 
 
 [4]
 In Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), Cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954), appellants borrowed money from individuals in return for promissory notes, promising to bet the money on a fixed volleyball game but intending to keep the money for their own use. We held that the promissory notes were "evidence of indebtedness," one of the terms that the 1933 Act defines as a security. One district court has noted:
 (T)he victims (in Llanos ) were purchasing an opportunity to share in the profits of the fixed volleyball game. The victims expected their investment to yield profits from a betting scheme rather than a return of interest on the money they had given as consideration for the promissory notes in question.
 Chess v. Nieport, 386 F.Supp. 312, 314 (E.D.Cal.1974). By contrast, we conclude that there was no such investment purpose in the instant case.