**DEAUVILLE SAVINGS & LOAN ASSOCIATION, a California savings and loan association, Plaintiff,**

v.

**WESTWOOD SAVINGS AND LOAN ASSOCIATION, a California savings and loan association; Vernon Savings and Loan Association, a Texas savings and loan association; Roy F. Dickey, Jr., an individual; Sharon Bivins, an individual; Hall Park Central Associates, a Texas limited partnership; Hall Group Investment Corporation, a Texas corporation; Hall 83 Associates, a Texas general partnership; Craig Hall, an individual; Howard Jackson Associates, Inc., a New York corporation; Richard J. Di Geronimo, an individual; Robert M. Borax, an individual; and Diane M. Popsidero, an individual, Defendants.**

**No. CV 86–1400 RG(Kx).**

United States District Court, C.D. California.

July 7, 1986.

Larry W. Gabriel and Holly J. Fujie, Rosen, Wachtell & Gilbert, Los Angeles, Cal., for plaintiff Deauville Sav. & Loan Ass'n.

Robert E. Mangels and Bonnie MacNaughton, Jeffer, Mangels & Butler, Los Angeles, Cal., for defendant Vernon Sav. and Loan Ass'n.

Paul B. George and David A. Sprowl, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Newport Beach, Cal., for defendant/cross-complainant Federal Sav. & Loan Ins. Corp., as Conservator for Westwood Sav. and Loan Ass'n.

Martin Shaw, Freedman, Weisbein & Samuelson, P.C., Garden City, N.Y. and Jeffrey H. Kapor, Katz, Hoyt, Seigel & Kapor, Los Angeles, Cal., for defendants Richard J. DiGeronimo and Robert M. Borax.

David C. Mattka, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., Daniel L. Rasmussen, Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., for defendants Hall Park Cent. Associates, Hall 83 Associates, Hall Group Inv. Corp. and Craig Hall.

Jack Corinblit, Marc M. Seltzer, Corinblit & Seltzer, P.C., Los Angeles, Cal., for defendant Howard Jackson Associates, Inc.

## ORDER DISMISSING ACTION

GADBOIS, District Judge.

The Court, having heard argument from counsel on June 2, 1986, with respect to the motions to dismiss plaintiff's complaint, and having considered all of the papers filed and the oral arguments made at the hearing, and having considered all of the other pleadings, papers and files herein,

IT IS HEREBY ORDERED:

The claims brought under federal securities laws alleged in the first claim for relief of plaintiff's complaint are dismissed for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction. Since no other basis of federal jurisdiction remains, the Court also hereby dismisses the pendent state law claims alleged in Counts 2 through 13 of plaintiff's complaint. Consequently, this Court hereby dismisses the entire action as to all parties. The dismissal of this action shall be without prejudice to the right of plaintiff to commence any appropriate proceedings in a state court of competent jurisdiction on any of its state law claims.

## I.

### FEDERAL SECURITIES LAWS CLAIMS

Plaintiff Deauville Savings & Loan Association ("Deauville") commenced this action against twelve defendants. Motions to dismiss were thereafter filed on behalf of defendant Howard Jackson Associates, Inc. ("Jackson Associates") and Vernon Savings and Loan Association ("Vernon"). The sole alleged basis for federal jurisdiction set forth in plaintiff's complaint is the presence of plaintiff's first claim for relief, which alleges a violation of section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b), and rule 10b-5, 17 C.F.R. 240.10b-5, promulgated thereunder. Complaint, ¶ 15.

Section 10(b) and rule 10b-5 relate to false and misleading statements or other fraudulent conduct made in connection with the purchase or sale of a "security" within the meaning of the 1934 Act. Plaintiff alleges that its claim arose from its purchase of a "participation interest" in a secured loan made by another savings and loan association, defendant Westwood Savings and Loan Association ("Westwood"), which was acquired by Vernon, also a savings and loan association, and then subsequently assigned to plaintiff. Complaint,

¶¶'s 18, 19, 20 and 22. Plaintiff attached to its complaint, as Exhibits A, B and C thereto, the loan participation documents upon which it bases its claim. Complaint, ¶¶'s 19, 20 and 22.

For the reasons hereinafter set forth, the loan participation acquired by Deauville is not a security within the meaning of the 1934 Act. Therefore, no claim for violation of the federal securities laws has been or can be stated, and the first claim for relief must be dismissed for failure to state a claim upon which relief can be granted. *Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426 (9th Cir.1978). Because the 1934 Act claim has no basis, and such claim is the sole ground alleged to support federal jurisdiction, the entire action must be dismissed for lack of subject matter jurisdiction under rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Amfac*, 583 F.2d at 430, n. 5.[1]

The Court recognizes that the question of whether a particular instrument, agreement or other transaction is a security may sometimes rest upon an inquiry requiring disposition on summary judgment or the resolution of disputed facts at trial. *See, e.g., Simon Oil Co., Ltd. v. Norman*, 789 F.2d 780 (9th Cir.1986) (fractional interests in oil and gas rights could be securities). However, "if the transactions pleaded do not constitute 'securities,' then dismissal for failure to state a claim upon which relief can be granted is proper." *Amfac*, 583 F.2d at 430.

The seminal decision regarding the definition of a security under the federal securities laws is *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In that case, the Supreme Court found the investment scheme constituted an "investment contract" within the statutory definition because the scheme "involve[d] [i] an investment of money [ii] in a common enterprise [iii] with profits to come

solely from the efforts of others." 328 U.S. at 301, 66 S.Ct. at 1104. Although *Howey* limited this three-prong test to the subset of securities constituting "investment contracts," the Supreme Court later held that this three-prong test "embodies the essential attributes that run through all of the Court's decisions defining a security." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 at 852, 95 S.Ct. 2051 at 2060, 44 L.Ed.2d 621 (1975). The Ninth Circuit utilizes a "risk capital" test that looks to whether the investor "contributed 'risk capital' subject to the 'entrepreneurial efforts' of [others]." *United California Bank v. THC Financial Corp.*, 557 F.2d 1351, 1358 (9th Cir.1977). The Ninth Circuit has stated that its approach merely encompasses the *Howey* test. *Amfac*, 583 F.2d at 432. In analyzing the facts alleged in the present complaint, one must be mindful not only of the breadth, but also the necessary limitations which the Supreme Court has placed on the "security" definition. On the one hand, the Supreme Court has noted that the definition "embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299, 66 S.Ct. at 1103. On the other hand, the Supreme Court has more recently recognized that "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982).

Moreover, the broad statutory definition is not necessarily dispositive as to whether a particular instrument, agreement or transaction constitutes a security.[2]

In *Amfac*, the Ninth Circuit applied a six-factor test to determine whether a par-

---

1. In so ruling, the Court does not reach or decide the other grounds urged in support of the motions to dismiss plaintiff's complaint.

2. In *Marine Bank,* the Supreme Court stated:

"The broad statutory definition (of security) is preceded ... by the statement that the terms mentioned are *not* to be considered securities *if the context otherwise requires.*" 455 U.S. at 556, 102 S.Ct. at 1223 (emphasis added).

ticular loan transaction or agreement should be deemed to be a security, which it had earlier announced in *Great Western Bank & Trust v. Kotz,* 532 F.2d 1252 (9th Cir.1976). Those six factors, no one of which were held to be dispositive, were identified as follows:

(1) The time provided for repayment of the loan.

(2) Whether the loan was collateralized.

(3) The form of the obligation.

(4) The circumstances of issuance.

(5) The relationship between the amount borrowed and the size of the borrower's business.

(6) The contemplated use of the loan proceeds.

The Court also noted in *Kotz* that the actual use of the proceeds was irrelevant, stating, "The nature of an instrument is to be determined at the time of issuance, not at some subsequent time." *Kotz,* 532 F.2d at 1255. In *Kotz,* the Ninth Circuit held that a ten-month renewable unsecured promissory note given to a bank for a line of credit was not a security. Although the bank, as an unsecured creditor, "relied upon the future earnings and net worth of [the borrower] to recover principal and interest," nonetheless the line of credit was at most a "risky loan" and not an investment of "risk capital." *Kotz,* 532 F.2d at 1254.

In *Amfac,* the Ninth Circuit held that a loan to provide construction financing for the development of a shopping center, which was evidenced by a two-year renewable promissory note, and which was secured by the shopping center to be developed, was not a security.

While finding that two of the six factors could be found to support the plaintiff's claims in *Amfac,* namely, the relationship between the amount borrowed and the size of the borrower's business and the contem-

plated use of the funds, the Court found that the other four factors supported the defendants' position that the loan did not constitute an investment of "risk capital," and thus the loan and related promissory note did not constitute a "security."

Turning to the loan participation at issue in this case which was acquired by plaintiff, the Court must consider the allegations of the complaint, together with the loan documents attached as exhibits thereto, which plaintiff alleges constitute the basic documents evidencing the loan participation at issue in this case. *See Amfac,* 583 F.2d at 430.

Applying the six-factor "risk capital" test applicable in this Circuit to the facts alleged in plaintiff's complaint and the facts apparent from the exhibits attached thereto and expressly incorporated therein, the Court concludes that the loan participation at issue in this case is not a security within the meaning of the federal securities laws.[3]

Plaintiff alleges that in January 1984, defendant Westwood purchased and sold certain commercial real property located in Dallas, Texas. Complaint, ¶¶'s 17 and 18. Plaintiff alleges that the project was sold by Westwood for $64 million. Complaint, ¶ 18. Plaintiff also alleges that approximately one year after the sale of the property by defendant Westwood that Westwood executed a loan participation agreement with defendant Vernon, which set forth the terms under which Vernon agreed to purchase participation interests in various loans secured by real property. A copy of this participation agreement is attached to the complaint as Exhibit A thereto. Complaint, ¶ 19. Plaintiff further alleges that in late December 1984, defendants Westwood and Vernon executed a "Participation Certificate," and that pursuant to the terms of the aforesaid partic-

---

**3.** A considerable body of law has developed concerning the appropriate definition of a security. The statutory definitions are provided in § 2(1) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77b(1), and § 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10). Although the definition of a "security" in the 1933 and 1934 Acts differs slightly, the two definitions have been held to be virtually identical. *Tcherepnin v. Knight,* 389 U.S. 332, 335–36, 88 S.Ct. 548, 552–53, 19 L.Ed.2d 564 (1967).

ipation agreement, defendant Vernon agreed to purchase a $3.7 million participation interest in a loan secured by the commercial real property in question. Complaint, ¶ 20. The complaint alleges that the loan participation agreement was a contract entered into between defendants Westwood and Vernon on December 19, 1984, and further alleges that the loan participation evidenced by the "Participation Certificate" between Westwood and Vernon was then assigned to plaintiff Deauville, another savings and loan association, on February 28, 1985. Complaint, ¶¶'s 19, 20 and 22.

The following analysis of the loan participation acquired by plaintiff Deauville reviews each of the foregoing six factors in light of the facts alleged by plaintiff:

1. *The Time Provided for Repayment of the Loan.*

The underlying loan and participation interest therein have a ten-year term. Complaint, Exhibit B, page 53. It is not alleged by plaintiff that this is an unusual length of time for purchase financing in a commercial real estate project similar to the $64 million real estate project at issue here. In addition, the loan participation agreement provides, in substance, that plaintiff has the right, as the purchaser of the loan participation, to require Westwood to repurchase the loan participation within 18 months of purchase if any misstatement of material fact is discovered concerning the transaction, whether intentional or not. Complaint, Exhibit A, ¶ 8. If Westwood, the seller of the loan participation, becomes insolvent, then Deauville as the purchaser of the loan participation would directly succeed to all of Westwood's rights as the lender. Complaint, Exhibit A, ¶ 18. In addition, Westwood as the seller of the loan participation had the right to repurchase the loan participation at any time if there were any default by the mortgagor, or if Westwood desired to advance any additional money to the mortgagor and Deauville, as the purchaser of the loan participation, did not consent to such additional advance by Westwood to the mortgagor. Complaint, Exhibit A, ¶¶'s 13 and 15.

Thus, although the agreement provides for a ten-year underlying loan and concomitant ten-year term for the loan participation, there are a variety of circumstances which could lead to a shorter term than ten years. In any event, the ten-year term does not, in the circumstances presented, indicate the presence of a security.

2. *Collateralization.*

Under the agreement, while Westwood as the seller of the loan participation has legal title to the security for the loan, Deauville, as the purchaser of the loan participation, was granted the beneficial ownership of the underlying obligation of the mortgagor, which obligation is secured by the real property in question. Complaint, Exhibit A, ¶ 11. In addition, Westwood as the seller of the loan participation undertook to preserve the rights of all parties to the mortgage instruments and to hold legal title to such instruments for the benefit of Deauville as the purchaser of the loan participation. Complaint, Exhibit A, ¶ 11.

Thus, Deauville was granted beneficial ownership of the mortgage securing the repayment of the loan to Westwood by the mortgagor.

3. *The Form of the Transaction.*

The form and characterization of the participation loan in the present case were not such as to give rise to any reasonable expectation by the parties that the transaction would be covered by the securities laws. Throughout the documents attached to the complaint, the transaction is described as a "loan" and the underlying security is referred to as a "mortgage" or "mortgaged premises." *See* Complaint, Exhibit A, ¶¶'s 1a, 1c, 2, 7, 9, 11, 13, 15, 17; Exhibit B. Moreover, even the assignment made by Vernon to plaintiff describes the interest transferred as a "participation interest" in a "loan." Complaint, Exhibit C. Nowhere in any of the documents attached to the complaint (or, for that matter, in the

express allegations of the complaint itself) is there any indication that the parties considered the transaction to be governed by the securities laws.

The transaction was structured as the sale of an undivided interest in a mortgage loan with an obligation to remit monthly payments of interest and by the mortgagor to Westwood. Complaint, Exhibit A, ¶ 13. The interest to be paid was predetermined at a set rate. *Id.* Deauville as the purchaser of the loan participation was not entitled to anything more than the payment of such monthly interest payments. Complaint, Exhibit A, ¶ 13. Significantly, plaintiff does not allege it has any equity or profit interest in the underlying real estate project. Complaint, Exhibit A, ¶ 13. In addition, all of the records which were kept concerning the underlying transaction and the loan were to be made available to Deauville upon its request. Complaint, Exhibit A, ¶ 17.

Thus, the form of the transaction does not suggest that the loan participation should be deemed to be a security.

### 4. *Circumstances of Issuance.*

The complaint alleges a one-on-one negotiation between sophisticated financial institutions which are heavily regulated by federal and state regulatory agencies having oversight responsibilities over savings and loan associations. Complaint, ¶¶'s 1, 2, 3, 19, 20 and 22. There is no allegation that the loan participation was sold on a public offering to unsophisticated investors by means of any prospectus, offering circular or similar instrument, or sold on any public offering of any kind.

Thus, the circumstances of issuance do not indicate the existence of a security.

### 5. *Relationship Between the Amount Borrowed and the Size of the Borrower.*

The complaint alleges that the real estate project was sold for $64 million and that the loan participation represents approximately $3.7 million in amount. Complaint, ¶¶'s 17, 18, 19, 20 and 22. Thus, the size of the loan participation appears to be relatively small as compared to the stated sales price of the property, equalling approximately 6% of the total price of the real property in question. However, even if an assumption is made in favor of plaintiff that the amount borrowed is large with respect to the size of the borrower, that fact, standing alone, would not be dispositive in favor of plaintiff. *Amfac,* 583 F.2d at 430.

### 6. *Contemplated Use of the Proceeds.*

The complaint alleges that the loan participation interest pertained to a loan made in connection with the purchase and sale of commercial real property. This appears to indicate that the transaction did not involve an investment of risk capital, as opposed to a commercial real estate financing arrangement. *Cf. Amfac,* 583 F.2d at 430 (promissory note given for loan to finance construction of shopping center not considered a security).

For the foregoing reasons, among others, the Court finds and concludes that the loan participation purchased by plaintiff is not a security within the meaning of the federal securities laws. This Court's conclusion that the loan participation acquired by plaintiff is not a security is further fortified by the fact that virtually all of the cases that have considered the question have determined that a loan participation is not a security. *See Union National Bank of Little Rock v. Farmers Bank,* 786 F.2d 881 (8th Cir.1986); *Kansas State Bank v. Citizens Bank of Windsor,* 737 F.2d 1490 (8th Cir.1984); *Union Planters National Bank of Memphis v. Commercial Credit Business Loans,* 651 F.2d 1174 (6th Cir. 1981), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981); *United American Bank of Nashville v. Gunter,* 620 F.2d 1108 (5th Cir.1980); *Provident Nat'l Bank v. Frankfort Trust Co.,* 468 F.Supp. 448 (E.D.Pa.1979); *FBS Financial Inv. v. Cleve-Trust Realty Investors* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,341 (N.D.Ohio 1977).

Another reason for excluding loan participation agreements between sophisticated financial institutions from the scope of the federal securities laws stems from the lack of need for such protection by sophisticated institutions and the fact that loan agreements made by such financial institutions are heavily regulated by other state and federal laws. *See, e.g., United Sportfishers v. Buffo,* 597 F.2d 658, 660–661 (9th Cir.1978); *Hirsch v. duPont,* 553 F.2d 750, 763 (2d Cir.1977) ("The securities laws were not enacted to protect sophisticated businessmen from their errors of judgment"). Indeed, few enterprises are more regulated than commercial lending by savings and loan associations in such areas as to whom loans can be made, loan amounts, loan ratios and sufficiency of collateral. *See* Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub. No. 95–630, 92 Stat. 3641 (codified throughout Title 12, United States Code).

For these reasons, among others, the Court concludes that the loan participation acquired by plaintiff is not a security, and that plaintiff's federal securities laws claims should therefore be dismissed for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure, and for lack of subject matter jurisdiction under rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court further concludes that the remaining state law claims should be dismissed without prejudice under the doctrine of *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), and that, consequently, this action shall be dismissed in its entirety as to all parties.

Let Judgment be entered accordingly.

IT IS SO ORDERED.