**UNITED MERCHANTS AND MANUFAC-TURERS, INC. and Graniteville Company, Appellees,**

v.

**AIKEN COUNTY PUBLIC SERVICE AU-THORITY; The City of Aiken; City of North Augusta and County of Aiken, Appellants.**

No. 84–1752.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1985.

Decided July 1, 1985.

---

Henry Summerall, Jr., Aiken, S.C. (James D. Bailey; Summerall & Bailey, P.A.; C. Wesley Smith, Aiken, S.C., Kelly F. Zier, North Augusta, S.C., on brief), for appellants.

Robert O. King, Greenville, S.C. (Lewis T. Smoak, R. Bryan Struble, Jr.; Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, S.C., on brief) and Julian B. Salley, Jr., Aiken, S.C. (Henderson, Salley, Lynn, Farmer & Brown, Aiken, S.C., on brief), for appellees.

Before RUSSELL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

■ The question is the enforceability of a cost recovery provision inserted in a public works contract pursuant to a requirement of federal law after repeal of the federal requirement. We agree with the district court that the provision became unenforceable with the repeal of the federal statute.

I.

In January 1977 United Merchants and Manufacturers, Inc., Graniteville Company, the City of Aiken, South Carolina, and the City of North Augusta, South Carolina entered into contracts with Aiken County and the Aiken County Public Service Authority for the construction and operation of the Horse Creek Basin Waste Water Treatment System. The estimated total cost of construction was approximately $37,885,000, and a grant from EPA was to cover 75% of that amount.

Operating costs were and still are to be covered by the four users in proportion to their use. In accordance with the requirement of the Federal Water Pollution Con-

trol Act, 33 U.S.C.A. § 1251, *et seq.*, the contract also contained a provision for the recovery, over a thirty-year period, from the two industrial users of their proportion of the EPA grant. The use of the two industries was estimated to be approximately 60% of the total use, so that over the thirty-year period, the two industries would be assessed charges equal to approximately 60% of the federal grant.[1] Under the statute, however, the Industrial Cost Recovery (ICR) charges were to be divided equally between the federal treasury and the grantee, the Aiken County Public Service Authority.[2] The first ICR payment was not due until one year after the facility's completion, which was fixed by the contract at November 19, 1979.

While the facility was under construction, the Congress, in December 1977, declared a moratorium on the collection of ICR payments. That moratorium was extended until June 30, 1980. On October 21, 1980, President Carter signed Public Law 96–483 which repealed the statutory requirement of ICR payments as contained in 33 U.S.C.A. § 1284(b)(1)(B). The repealing statute was made effective as of December 27, 1977, the date of the enactment of the first moratorium, and the repealing statute directed the Administrator of EPA to take such steps as may be necessary to remove from any grant any requirement of ICR payments made inapplicable by virtue of the repealing statute.

Notwithstanding the earlier repeal of the federal statute requiring ICR payments, the Aiken County Public Service Authority sent its first ICR payment notices to United Merchants and Graniteville on November 1, 1980. Both companies refused payment, and United Merchants brought this action within the diversity jurisdiction for a declaratory judgment. Later, Graniteville was joined as an additional plaintiff and the cities of Aiken and North Augusta intervened as additional defendants.

**II.**

The defendants insist that the repeal of the ICR requirement was effective only as to that portion of any ICR obligation that, except for the repeal, would have been returnable to the federal treasury, leaving the Authority free to collect and retain the other 50%. The entire ICR scheme, however, was embodied in the Federal Water Pollution Control Act of 1972, and that provision was completely repealed in 1980. Nor did the Congress rest with that. Pursuant to the statute, the Administrator of EPA had been including ICR requirements in its grants, and the Congress directed him to take appropriate steps to eliminate them from grants already made to the extent that any such requirement was inconsistent with the repealing statute.

If there were any doubt about the matter, it should be laid to rest by the legislative history.

The repealing statute, as first passed in the Senate, contained a provision permitting grantees, such as the Aiken County Public Service Authority, to retain the federal portion of any previously collected ICR payments. That provision was deleted in the House of Representatives after statements from the floor that the ICR was unfair and discriminatory and that funds collected from an industry pursuant to its requirement should be returned to the paying industry. The ICR was thought an unfair transferral of costs to the industrial section of the economy and a substantial threat to future employment. The House Committee Report stated that the purpose of the bill was "to exempt local industries from paying to the grantee their share of the costs of constructing a waste water treatment facility." H.R.Rep. 983, 96th Cong., 2d Sess. 7 (1980).

The Senate accepted the House version of the bill.

---

**1.** The figures were subject to adjustment from time to time based upon actual use.

**2.** The Authority was actually to collect the entire charge, and then pass on 50% to the federal treasury. The Authority's use of its portion of such ICR payments was largely restricted to expenditures for expansion, improvement or replacement.

The Congress found that requiring proportional repayment of the federal grant by industrial users, but not by municipal users, of waste water treatment facilities was unfair and discriminatory. Enforcement of the requirement made use of joint facilities much more costly to an industrial user than to a municipal user. In repealing the requirement, the obvious intention of Congress was to eliminate the requirement in its entirety.

Little comfort for the defendants is to be found in *Genesee Brewing Co., Inc. v. Village of Sodus Point, New York*, 733 F.2d 258 (2d Cir.1984). There, it appears that the village had adopted a sewer rent law incorporating the formula for ICR payments. The brewing company made such a payment during the moratorium period and brought an action in the United States District Court for its refund. The district court dismissed the claim, and the Court of Appeals for the Second Circuit affirmed. There was evidence in the legislative history that Congress intended that such payments be refunded, but the statute did not address the question. Thus no private right of action for a refund could arise by implication from the federal statute. The plaintiff's claim arose entirely under state law, and the federal courts were without jurisdiction to entertain it.

While the Congress may not have addressed the question of refunds by grantees of previously collected ICR payments, it clearly repealed the federal requirement of such payments, and, since jurisdiction here is founded upon diversity of citizenship, there is no problem of jurisdiction to enter a declaratory judgment. The *Genesee Brewing* case simply has no bearing here.

### III.

■ The defendants contend that, as a matter of state contract law, the grantee may collect one-half of the stipulated ICR payments.

The contracts with United Merchants and Graniteville included provisions requiring the ICR payments in accordance with the Federal Water Pollution Control Act. Inclusion of that contractual obligation in the formal contracts was a necessary pre-condition to receipt of the federal grant. It was not something negotiated by parties free to make their own bargain. It was entirely the creature of federal statute and regulation.

While claiming that the contractual obligation survived the repeal of the federal requirement which gave it its birth, the defendants concede that they may not collect the ICR's in their entirety, but contend only that they should be allowed to collect that portion of the ICR which, under federal statute and regulation, would have been retained by the Authority for its own restricted use.

That, of course, is not what the contract provided, and partial enforcement of the contractual undertaking, to that extent, would conflict with the clearly expressed intention of Congress that payment of ICR's not be exacted after the effective date of the repealing statute.

### IV.

■ Nor is the defendants' position helped by reference to the general savings statute, 1 U.S.C.A. § 109. The obligation to make ICR payments was contingent upon completion of the project, and the first payment was not due until one year after the facility had been placed in operation. The effective date of the repealing statute was almost two years before the treatment facility was completed, and the actual date of the passage of the repealing statute was within a year after the project's completion date. Whatever might be said of the general savings statute under other circumstances, it cannot operate to preserve this contingent and unaccrued liability after repeal of the statute under which it arose, for no such liability had been "incurred" at the time of repeal.

### V.

Finding no merit in this appeal, the judgment of the district court is affirmed.

AFFIRMED.