Robert E. DANNER; Charlotte Danner; Gadan, Inc., Plaintiffs,

v.

Henry HIMMELFARB; Charles T. Hays; Richard A. Edwards; Golden Arrow Gas Energy Corporation; Jim Kitchens; Ronald G. Miller; Thomas E. Stepp; Rutan & Tucker; Robert Pike; Empire Equities; Ronald Garrett; Andre Iseli, Defendants/Cross-defendants/Appellees,

Vincent E. Davis, Defendant/Cross-claimant/Appellant.

No. 87–6021.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1988.

Decided Sept. 28, 1988.

**516**

Gordon T. Carey, Jr., Portland, Or., for defendant/cross-complainant/appellant.

Edmund G. Farrell, III, and B. Eric Nelson, Murchison & Cumming, Los Angeles, Cal., for defendants/cross-defendants/appellees.

Before BRUNETTI, KOZINSKI and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The district court granted summary judgment against Vincent E. Davis on his federal securities law claim and dismissed his state law claims against Henry Himmelfarb, Charles T. Hays, Richard A. Edwards, Golden Arrow Gas Energy Corp. ("GAGE"), Jim Kitchens, Ronald G. Miller, Thomas E. Stepp, the law firm of Rutan & Tucker, Robert Pike, Empire Equities ("Empire") and Ronald Garrett. The district court concluded that Empire's promissory note given to Davis in exchange for $400,000 worth of pesos [1] was not a "security" within the meaning of the federal securities laws. Davis argues that summary judgment on his securities law claim was inappropriate because there are disputed issues of material fact. In the alternative, Davis would have us hold that even if Empire's promissory note is not a "security," the district court nonetheless abused its discretion by dismissing his state law claims after almost 3 years of discovery and pretrial maneuvering.

We have jurisdiction of this appeal under 28 U.S.C. § 1291, and we affirm.

### I

#### Standard of Review

We review de novo a grant of summary judgment. *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1404 (9th Cir. 1988). Viewing the evidence and its inferences in the light most favorable to the nonmoving party, summary judgment is proper if the movant is clearly entitled to prevail as a matter of law. *Matsushita*

[1]. In his reply brief, Davis explains that he is acting on behalf of himself and two other individuals, Messrs. Austin and Funckey. Each of these three individuals had pesos on deposit at Banamex, a Mexican bank. Austin and Funckey assigned their certificates of deposit to Davis so that he might represent them during the negotiations with Empire Equities.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lamothe*, 847 F.2d at 1404. "The moving party is entitled to judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). That is, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## II

### Facts and Proceedings

The appeal before us arises out of several transactions that began in 1981. In that year, the plaintiffs (who are no longer parties to this action) conveyed two pieces of real property to Hays and Himmelfarb in exchange for a promissory note secured by a deed of trust on a parcel of Oregon real property. Hays and Himmelfarb later granted a second deed of trust on this property to an Oklahoma bank.

Hays and Himmelfarb then sold the Oregon property to Golden Arrow Gas Energy Corp. (GAGE), which in turn sold the property to Empire Equities for an 80% ownership interest in Empire. After this transaction, Empire became a GAGE-subsidiary. Hays, Himmelfarb, and cross-defendants Edwards, Iseli, Kitchens and Miller are shareholders, officers and directors of GAGE. Edwards, Hays, Miller, Kitchens and Stepp are also officers and directors of Empire.

In 1982, Empire decided to pursue some investment opportunities in Mexico. To fund a proposed real estate development, Empire placed an advertisement in the Wall Street Journal soliciting pesos. One of Empire's employees told her father, Vincent E. Davis, that Empire was interested in acquiring pesos. Davis had $400,000 worth of pesos in Mexico which he could not bring out of the country because of recently imposed currency control restrictions. Davis asked his daughter to arrange a meeting for him with Empire's officers.

In November 1982, Davis met with Stepp, Hays and Garrett, who are Empire officers. They offered Davis oil and gas mineral interests in exchange for his pesos. Davis declined this offer, as he later declined the opportunity to exchange his pesos for a share of the profits from the Mexican venture. Davis eventually negotiated to receive from Empire, in exchange for his pesos, a promissory note in the principal sum of $400,000, payable in United States currency, with quarterly interest to be paid at an annual rate of prime plus 1%, with interest payments to commence in June 1984. Davis insisted that the note be secured by a first lien deed of trust. Empire agreed and granted Davis a lien on the Oregon property. Davis did not realize that this lien was subordinate to the liens of the plaintiffs and the Oklahoma bank.

In February 1984, Hays and Himmelfarb defaulted on the note they had given to the plaintiffs (the Danners and Gadan, Inc.) in connection with the original land transaction. The plaintiffs filed a suit to foreclose their deed of trust on the Oregon property. This suit was commenced in the United States District Court for the District of Oregon and Davis was named as a defendant. Davis answered the plaintiff's complaint and cross-claimed against his co-defendants Hays, Himmelfarb, Edwards and Empire. He alleged a federal securities law claim for fraud, as well as several state law claims. The court severed Davis's cross-claims for a separate trial. Himmelfarb moved for a transfer of the cross-claims to California. Before the court granted this motion, Davis amended his cross-claim to join Stepp, Kitchens and GAGE as additional cross-defendants under Federal Rule of Civil Procedure 13(h); these cross-defendants were not parties to the original action. The court then transferred Davis's severed cross-claims to the United States District Court for the Central District of California.

After the transfer, Davis filed second and third amended pleadings in which he joined Iseli, Miller, Garrett, Rutan & Tuck-

er, and Pike, as cross-defendants. Davis's cross-claim alleges causes of action against all cross-defendants for negligent and intentional misrepresentation, violation of state and federal securities antifraud provisions, and failure to register securities under federal and state law. Davis also alleged claims for negligence against Rutan & Tucker and Pike.

In the meantime, the district court in Oregon resolved the foreclosure action in favor of the plaintiffs; the plaintiffs have no further interest or role in this action. In the proceedings on the cross-claims, Himmelfarb, Miller, GAGE and Kitchens moved for summary judgment on the ground that the Empire note is not a "security" and therefore there is no federal securities law subject matter jurisdiction. The district court granted the motion for summary judgment. It then dismissed Davis's state law claims. Davis appeals.

### III

### *Analysis*

### A. *Empire's Note Is Not a Security*

We confront one of the most vexatious questions raised by the federal securities laws: When is a "note" a "security"? Both the Securities Act of 1933 and the Securities Exchange Act of 1934 define the term "security" to include any "note," "unless the context otherwise requires." *See* 15 U.S.C. § 77b(1) (section 2(1) of the 1933 Act); *id.* § 78c(a)(10) (section 3(a)(10) of the 1934 Act). Notwithstanding slight differences between the definitions in the 1933 and 1934 Acts, the Supreme Court has said that "the definitions of 'security' in [the Acts] are virtually identical and will be treated as such in ... decisions dealing with the scope of the term." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686

n. 1, 105 S.Ct. 2297, 2301 n. 1, 85 L.Ed.2d 692 (1985); *see also Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967) (same); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1356 (9th Cir.1977) ("The two definitions ... are considered functional equivalents.").

In exploring the boundaries of the term "security," the Court has eschewed a literal approach, focusing instead on the economic realities of the underlying transaction. *See, e.g., Tcherepnin*, 389 U.S. at 336, 88 S.Ct. at 553 ("[W]e are reminded that, in searching for the meaning and scope of the word 'security' in the [1934] Act, form should be disregarded for substance and the emphasis should be on economic reality."). Moreover, the context of the transaction sought to be placed within the scope of the securities laws is relevant to deciding whether some financial instrument is a "security." *Landreth*, 471 U.S. at 687, 105 S.Ct. at 2302; *United Sportfishers v. Buffo*, 597 F.2d 658, 660 (9th Cir.1978).

In applying the "economic realities" approach, we are guided by the Supreme Court's three-pronged test for "investment contracts": "There must be (1) an investment of money, in (2) a common enterprise and (3) an expectation of profits from the managerial efforts of others." *United Cal. Bank*, 557 F.2d at 1358 (paraphrasing the test of *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946)). Focusing on the " 'economic realities' standard plus the Court's emphasis of an expectation of profits from the entrepreneurial efforts of others," *id.*, this circuit has developed the so-called "risk capital" test to determine when a note transaction involves a "security." *Id.*[2]

**2.** In *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), the Court departed from its typical "economic realities" approach and used a "literal" interpretation of the federal securities laws to find that the sale of 100% of a corporation's common stock was the sale of a "security" within the meaning of the securities laws. The Court explained:

As we ... recognized in [*United Housing Found., Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975)], the fact that instruments bear the label "stock" is not itself sufficient to invoke the coverage of the Acts. Rather, we concluded that we must also determine whether those instruments possess "some of the significant characteristics typically associated with" stock, recognizing that when an instrument is both called "stock" and

We applied the "risk capital" test to a note transaction in *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1255 (9th Cir.1976). We explained in *Kotz* that by emphasizing the economic realities underlying a specific transaction, the Court has made it clear that not every transaction involving a "note" necessarily involves a "security." *Id.* at 1256. As a result, the courts of appeals have tried to distinguish between "commercial" transactions, which do not involve "securities," and "investment" transactions, which do. *Id.* at 1257. We have also quoted the Seventh Circuit's observation that

> [i]n one sense every lender of money is an investor since he places his money at risk in anticipation of a profit in the form of interest. Also in a broad sense every investor lends his money to a borrower who uses it for a price and is expected to return it one day.

*Id.* (quoting *C.N.S. Enterprises, Inc. v. G & G Enterprises, Inc.*, 508 F.2d 1354, 1359 (7th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975)). We developed the "risk capital" test to help us "distinguish between the 'risky loan' and 'risk capital.'" *Id.*

"Under the risk capital standard the ultimate question is whether the funding party contributed risk capital subject to the entrepreneurial or managerial efforts of others." *United Cal. Bank*, 557 F.2d at 1358

bears stock's usual characteristics, "a purchaser justifiably [may] assume that the federal securities laws apply." *Id.* at 686, 105 S.Ct. at 2302 (citations omitted; brackets added in part).

The Court's decision to rely on the characteristics of an instrument denominated "stock" to find coverage by the federal securities laws also found support in the "context of the transaction ... —the sale of stock in a corporation— [which] *is typical of the kind of context to* which the Act normally applies." *Id.* at 687, 105 S.Ct. at 2302. Thus, the Court's approach in *Landreth* does not require us to ignore the economic realities and the context of the underlying transaction in declining to label Empire's note to Davis as a "security." Indeed, the Court in *Landreth* said that it would "expressly leave until another day the question whether 'notes' or 'bonds' or some other category of instrument listed in the definition might be shown 'by proving [only] the document itself.'" *Id.* at 694, 105 S.Ct. at 2306 (quoting *SEC v. C.M. Joiner Leasing*

(internal quotation marks and brackets omitted; quoting *Kotz*, 532 F.2d at 1257). Our "risk capital" analysis generally requires us to apply a nonexclusive six-factor test in order to "analyze the nature and degree of risk accompanying the transaction to the party providing the funds." *Kotz*, 532 F.2d at 1256.[3] We have applied these factors in several cases involving note transactions. *See, e.g., Underhill v. Royal*, 769 F.2d 1426, 1431 (9th Cir.1985); *AMFAC Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 432–34 (9th Cir.1978); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1358–59 (9th Cir. 1977). We also have applied the "risk capital" test to the sale of fractional undivided oil and gas mineral interests. *E.g., Simon Oil Co. v. Norman*, 789 F.2d 780, 782 (9th Cir.1986). But in each of these cases, the question whether the instrument constituted a "security" was a close one, requiring us to decide if the extension of funds was a "risky loan" or an investment of "risk capital," *see, e.g., Underhill*, 769 F.2d at 1431; or whether what was undoubtedly an "investment" was subject to the risks associated with leaving money to the entrepreneurial or managerial control of others, *see, e.g., Simon Oil*, 789 F.2d at 782. We have *not* applied the "risk capital" test when the context of the underlying transaction is such that it is clear that no "security" is

*Corp.*, 320 U.S. 344, 355, 64 S.Ct. 120, 125, 88 L.Ed. 88 (1943)).

3. The six factors identified in *Kotz* are (1) length of time the funds are at risk; (2) collateralization; (3) form of the obligation; (4) circumstances of the issuance; (5) relationship between the amount borrowed and the size of the borrower's business; and (6) contemplated use of the funds. *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1257–58 (9th Cir.1976). In *Kotz*, we rejected as relevant criteria the negotiability of the instrument and the transaction impetus. *Id.* at 1258 n. 5. We have emphasized that our list is not exhaustive, that none of the factors is by itself dispositive, *id.* at 1258, and that it is the combined effect of the factors that determines whether the funding party has advanced "risk capital" or simply made a "risky loan." *Id.; see also Underhill v. Royal*, 769 F.2d 1426, 1431 (9th Cir.1985); *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 432 (9th Cir.1978).

involved. *See United Sportfishers v. Buffo*, 597 F.2d 658 (9th Cir.1978).

■ At the outset, we note that "the nature of an instrument is to be determined at the time of issuance, not at some subsequent time." *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 826 (9th Cir.) (quoting *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1255 (9th Cir.1976)), *cert. denied*, — U.S. —, 107 S.Ct. 2483, 96 L.Ed.2d 375 (1987). In the present case, because of recently imposed currency control laws, Vincent Davis had a substantial sum of money trapped in Mexico. Davis wanted to get his money out of Mexico. Through his daughter, an Empire Equities employee, Davis learned that Empire wanted to purchase pesos. Davis asked his daughter to arrange a meeting between him and Empire to discuss selling his pesos. When Davis and Empire's officers met, Davis offered to sell Empire his pesos. Empire offered to exchange the pesos for oil and gas mineral interests. Davis declined the offer, as he later declined Empire's offer to advance the pesos against a share of the profits to be derived from Empire's contemplated Mexican development venture. Instead, Davis offered to sell his pesos in exchange for a promissory note secured by a deed of trust on real property. Davis negotiated a note that paid him $400,000 in United States currency at the end of a four-year term. Quarterly interest payments were scheduled to begin 1½ years after the date of the note. Indeed, it was in response to Davis's tax-planning considerations that Empire agreed to defer payment of quarterly interest. Davis demanded his note be secured by a first deed of trust on real property. The deed of trust he received was not a first lien on the property. Perhaps Davis was defrauded. But fraud alone does not implicate the anti-fraud provisions of the federal securities laws. *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982); *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1253 (9th Cir.1976).

Like the plaintiff in *Buffo*, Davis sold an asset in exchange for a promissory note secured by a deed of trust. Davis did not "invest" his money in Empire or in Empire's planned Mexican venture. He did not expect "profits" in the sense of either capital appreciation or a share of the earnings from a business venture formed with the borrowed capital. *See Buffo*, 597 F.2d at 660 (discussing the Supreme Court's definition of "profits" in *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975)). Davis did not "lend" Empire money, except to the extent that any sale of an asset in exchange for a promissory note represents the seller's loan to the buyer of a portion of the purchase price. Based on the context of the transaction and its economic realities, we agree with the district court that Empire's note is not a "security" for purposes of the federal securities law. Summary judgment was proper.

## B. *Dismissal of Davis's State Claims*

Davis contends that the district court in California lacked power to dismiss his state law claims, either because the transfer of his claims to it left it without power to do anything other than hear the entire case or because it lacked power to dismiss once the transferor court in Oregon resolved the original foreclosure action. Davis also argues that even if the district court in California had power to dismiss his claims, it abused its discretion because it treated his state claims as pendent to his federal claim, rather than viewing all his claims as ancillary to the original foreclosure action.

### 1. *Transfer of the Case*

■ Before the federal district court in Oregon resolved the original foreclosure action, that court granted a motion under 28 U.S.C. § 1404(a) to transfer trial of Davis's cross-claim to another proper venue for convenience of witnesses. Davis does not contend that the transfer of the case from the District of Oregon to the Central District of California was improper. Rather, Davis asserted at oral argument that the transfer, in and of itself, rendered the transferee court without power to dismiss the action.

Although discussed in only a handful of cases and considered but briefly in the literature, the answer to this argument is fairly obvious: "[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely refered to another tribunal, leaving untouched what has been already done." *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 868 (2d Cir.1950); *see also Landwehr v. United States (In re Miller)*, 485 F.2d 74, 76 (5th Cir.1973) (applying *Magnetic Engineering* in bankruptcy context), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed. 2d 886 (1974); *Ginsburg v. Mutual Life Ins. Co.*, 170 F.Supp. 212, 214 (S.D.N.Y. 1958), *aff'd*, 263 F.2d 608 (2d Cir.), *cert. denied*, 360 U.S. 917, 79 S.Ct. 1434, 3 L.Ed. 2d 1533 (1959); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3846, at 362 & n. 16 (collecting cases). As the Judicial Panel on Multi–District Litigation has observed:

> On change of venue the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer.

*In re Plumbing Fixture Cases*, 298 F.Supp. 484, 495 (J.P.M.D.L.1968) (citations omitted); *accord In re Yarn Processing Patent Validity Litig.*, 472 F.Supp. 174, 177 (S.D.Fla.1979) (following *Plumbing Fixture*); *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 81 F.R.D. 482, 487 (E.D.Mich.1979) (same), *aff'd*, 664 F.2d 114 (6th Cir.1981).

### 2. Pendent Claims and Ancillary Jurisdiction

Davis alleges that the district court erred in dismissing his state law claims when it treated these claims as pendent to his federal securities law cross-claim. He contends his state law claims should have been treated not as *pendent* claims, but as claims within the *ancillary* jurisdiction of the district court. Before answering Davis's argument, however, we emphasize that our first task is to distinguish between the court's jurisdiction over the claims joined by Davis under Rule 13(g) and its jurisdiction over the parties added under Rule 13(h) to defend against those claims. In the abstract, we agree with Davis's definition of "pendent claims" and "ancillary jurisdiction." We have explained that "[p]endent claims are state claims which arise from the same 'nucleus of operative facts' as that of a federal claim and which are joined in the same complaint with the federally cognizable claim by the original plaintiffs against the original defendants." *Blake v. Pallan*, 554 F.2d 947, 956–57 n. 11 (9th Cir.1977). We also have observed that "[ancillary] jurisdiction typically involves claims by a defending party brought into court against its will, or by another person whose rights might be irretrievably lost unless [he or] she could insert them in an ongoing federal action." *Redding Ford v. California State Bd. of Equalization*, 722 F.2d 496, 498 (9th Cir.1983) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978)), *cert. denied*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).

By these definitions, Davis's cross-claims fall within the "ancillary jurisdiction" of the district court. This is consistent with the conclusions reached by other courts faced with the same problem. *See* 6 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1433, at 177 & n. 33 (1977) (collecting cases in support of the statement that "[i]t has generally been held that cross-claims under Rule 13(g) fall within the ancillary jurisdiction of the court and need not present independent jurisdictional grounds of federal jurisdiction."). The rationale for ancillary jurisdiction is simple: Because the court already has jurisdiction over the main claim between the plaintiff and defendants, convenience, economy and fairness dictate that it should be able to resolve all other claims arising out of the same transaction or occurrence, or that relate to the property that is the subject matter of the principal action. *See Aldinger v. Howard*, 427 U.S. 1, 9–12, 11 n. 7, 96 S.Ct. 2413, 2418–19, 2419 n. 7, 49 L.Ed.2d 276 (1976); *see also Glens Falls Indem.*

*Co. v. United States,* 229 F.2d 370, 373–74, 373 n. 1 (9th Cir.1956). These same principles, of course, also underlie the doctrine of pendent jurisdiction, which permits the district court to resolve all claims asserted by the plaintiff which arise out of the same core of operative facts that form the basis of the action over which the federal court already has jurisdiction. *See Aldinger,* 427 U.S. at 9, 96 S.Ct. at 2418 (discussing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966)).

Davis's joinder of additional cross-defendants under Rule 13(h), however, raises a problem of "pendent party jurisdiction," which the Court first addressed in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). We have treated the "pendent party" issue as a subset of ancillary jurisdiction. *E.g., Libby, McNeill, & Libby v. City Nat'l Bank,* 592 F.2d 504, 510 (9th Cir.1978) ("Nor is jurisdiction over these two suppliers' claims saved by some type of ancillary or, more properly, pendent party jurisdiction."). We require an independent jurisdictional basis for the assertion of federal jurisdiction over pendent parties, even though the additional parties are called upon to answer claims within the court's ancillary jurisdiction. *E.g., Safeco Ins. Co. of America v. Guyton,* 692 F.2d 551, 555 & n. 5 (9th Cir.1982). Even though our approach is at odds with that of some of the other circuits, *see, e.g., Moor v. County of Alameda,* 411 U.S. 693, 713 n. 29, 93 S.Ct. 1785, 1798 n. 29, 36 L.Ed.2d 596 (listing cases) (1973), as well as commentators' analyses, *see, e.g.,* 6 C. Wright & A. Miller, *supra,* § 1436, at 191–92, the Supreme Court has not rejected our cautious approach to "pendent party" jurisdiction. Indeed, the Court has said that "[w]hether there exists judicial power to hear the state law claims against [a pendent party over whom there is no independent basis of federal jurisdiction] is ... a subtle and complex question with far-reaching implications." *Moor,* 411 U.S. at 715, 93 S.Ct. at 1799. In the present case, we need not decide whether our "pendent party" cases require reevaluation. Davis's cross-claim included a feder-al securities law claim. Because there was an independent basis for the exercise of federal jurisdiction over the parties joined under Rule 13(h), the court had power to decide the state law claims asserted against them.

It is also possible, however, to treat Davis's cross-claims and joinder of additional parties solely as a matter of pendent jurisdiction. Looking at the unique procedural setting of this case, we see that before trial of the original foreclosure action, the court severed Davis's cross-claims for separate trial. The court used Rule 42(b) to accomplish this result.

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim....

Fed.R.Civ.P. 42(b). Consequently, we may view Davis as the plaintiff for purposes of the separate trial on his cross-claim. *Cf. United States v. Hawaii,* 832 F.2d 1116, 1117 & n. 1 (9th Cir.1987) (per curiam) (treating third-party complaint as "commencing" an action for purposes of 28 U.S.C. § 1345); *United States v. City of Twin Falls,* 806 F.2d 862, 867 (9th Cir.1986) (treating third-party complaint under Fed.R.Civ.P. 14(a) as an "original" complaint for purposes of ancillary jurisdiction), *cert. denied,* ⸺ U.S. ⸺, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); *American Nat'l Bank & Trust Co. v. Bailey,* 750 F.2d 577, 582 (7th Cir.1984) (stating in dicta that "maybe the cross-claim should be treated as if it had been a complaint that kicked off a brand-new suit" for purposes of establishing jurisdiction over a cross-claim under Rule 13(g)), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985). If Davis is treated as an original plaintiff, then his state law claims, which arise out of the same core of operative facts as his federal securities claim, are pendent claims within the meaning of *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Whether we treat Davis's severed cross-claims as a new action or not, in the present case, the court

had jurisdiction over all the claims and each of the parties.

We do not find it necessary in this case to decide "whether there are any 'principled' differences between pendent and ancillary jurisdiction." *Owen Equipment,* 437 U.S. at 370 n. 8, 98 S.Ct. at 2401 n. 8 (quoting *Aldinger v. Howard,* 427 U.S. 1, 13, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976)); *cf. id.* 437 U.S. at 370, 98 S.Ct. at 2400 ("[Pendent and ancillary jurisdiction] are two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?"); *Blake v. Pallan,* 554 F.2d 947, 957 n. 11 (9th Cir.1977) ("Pendent jurisdiction is a specialized application of the ancillary jurisdiction concept." (citation omitted)). Whether Davis's state law claims are pendent to his federal cross-claim or are ancillary to the original action is irrelevant because, viewed either way, identical considerations lead us to conclude that the court did not abuse its "broad discretion" by dismissing the state law claims. *E.g., Moor,* 411 U.S. at 716, 93 S.Ct. at 1799. As we have said, "ancillary jurisdiction, like pendent jurisdiction, is a 'doctrine of discretion....'" *City of Twin Falls,* 806 F.2d at 868 (quoting *Blake v. Pallan,* 554 F.2d 947, 958 (9th Cir.1977)).

> The Supreme Court has told us that [pendent jurisdiction's] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 (citation and footnotes omitted). We have also said that "ancillary

jurisdiction" finds its justification in these same considerations. *See City of Twin Falls,* 806 F.2d at 868; *Blake,* 554 F.2d at 958; *see also Glens Falls Indem. Co. v. United States,* 229 F.2d 370, 373 (9th Cir. 1956) ("Ancillary claims may be entertained to prevent the relitigation in other courts of the issues heard and adjudged in the original suit." (internal quotation marks and citation omitted)). Moreover, the Court itself has emphasized that the decision to exercise ancillary jurisdiction rests on notions of judicial economy and convenience to the parties. *E.g., Owen Equipment,* 437 U.S. at 377, 98 S.Ct. at 2404. Ancillary jurisdiction also rests on the common sense notion that if the court has jurisdiction over the principal claim, it *may* also adjudicate claims arising out of the same transaction or that relate to the property which is the subject of the primary dispute, *see, e.g., Aldinger,* 427 U.S. at 11, 96 S.Ct. at 2419.

Applying the Court's decision in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it is our practice to dismiss state law claims once the federal claim has been resolved. *See, e.g., Durham v. Kelly,* 810 F.2d 1500, 1506 (9th Cir.1987) ("Where the district court has properly dismissed federal law claims 'pendent state claims also should be dismissed.'" (citing *Gibbs* )); *City of Whittier v. United States Dept. of Justice,* 598 F.2d 561, 564 (9th Cir.1979) ("Dismissal of the federal claim before trial warranted dismissal of the City's state law claim as well."); *Hodge v. Mountain States Tel. & Tel. Co.,* 555 F.2d 254, 261 (9th Cir.1977) ("When a district court dismisses all federal claims prior to trial, it should not retain jurisdiction over pendent state claims."); *accord United States v. Zima,* 766 F.2d 1153, 1158 (7th Cir.1985) (collecting cases in support of the statement, "The federal appeals courts in general ... have indicated a strong preference for the dismissal of pendent or ancillary claims whenever the district court disposes of the federal claims prior to trial").

■ As we understand Davis's argument, he contends the district court abused

its discretion because it dismissed his state claims after 3½ years of discovery and pretrial wrangling. Davis complains that he has been forced to refile his action in California state court and that he fears it will be several years before his claims are set for trial. Although we sympathize with Mr. Davis's frustration, his arguments do not show an abuse of discretion by the district court. In its *United Mine Workers* decision, the Court considered many of the contentions implicit in Davis's argument:

> The question of power [to decide pendent state claims] will ordinarily be resolved on the pleadings. But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which could not have been anticipated at the pleading stage. Although it will of course be appropriate to take account in this circumstance of the already completed course of the litigation, dismissal of the state claim might even then be merited.... [R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). Thus, while the passage of time is one factor favoring Davis's argument, it is by no means determinative.

[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only statelaw claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie–Mellon Univ. v. Cohill,* —— U.S. ——, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988) (citations and footnote omitted); *see also United States v. Zima,* 766 F.2d 153, 1158 (7th Cir.1985) ("After dismissal of federal claims, the district court must focus on factors such as judicial economy, fairness (particularly the prejudicial passage of state limitations periods) and convenience to the litigants, and the novelty or difficulty of the state law issues involved to determine whether to retain ancillary jurisdiction.").

Davis does not contend that his claims are time barred and that the policy of "fairness" therefore favors the exercise of jurisdiction by the district court. Davis simply asserts that it is inconvenient for him to have to refile in state court. But, as the Seventh Circuit has said, "Having to bring parallel suits may be a hardship, but it is not an injustice." *Hartford Accident & Indem. Co. v. Sullivan,* 846 F.2d 377, 381 (7th Cir.1988). Davis does not dispute, nor could he, that principles of comity will be well-served by allowing the state courts to resolve claims solely of state law. It is true, of course, that in some of our cases we have said that because of lengthy pretrial proceedings, it was not an abuse of discretion to retain jurisdiction over state claims after the federal claim has been dismissed. *See, e.g., Phelps v. Continental Ill. Nat'l Bank & Trust Co. (In re Nucorp Energy Sec. Litig.),* 772 F.2d 1486, 1491 (9th Cir.1985); *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 904 (9th Cir.1983). These cases, however, do not hold that the district court must exercise jurisdiction over pendent state claims whenever there have been lengthy pretrial proceedings. The decision to exercise jurisdiction is discretionary. The court in this case identified the relevant factors: "[T]he court ... has discretion to retain pendent jurisdiction over Davis' state law claims if considerations of judicial economy and fairness so dictate." The court balanced these factors,

exercised its discretion, and declined to retain the state claims. We are not left with "a firm and definite conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors," *United States v. Schlette*, 842 F.2d 1574, 1577 (9th Cir.1988) (citation omitted). Accordingly, we conclude the district court did not abuse its discretion in dismissing the state claims.

AFFIRMED.