Julius **GRAY** and Leroy William Rodewald, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**FIRST WINTHROP CORPORATION,** et al., Defendants.

No. C–90–2600–JPV.

United States District Court, N.D. California.

Oct. 28, 1991.

Elizabeth Joan Cabraser, Leiff, Cabraser
& Heimann, San Francisco, Cal., and Erwin

A. Sherman, Sherman and Osborne, Louisville, Ky., for plaintiff.

David C. Phillips, Goldstein & Phillips, San Francisco, Cal., and Barbara L. Moore, Cooley, Manion, Moore & Jones, Boston, Mass., for defendants Rednick & Wolfe, First Winthrop Corp., Winthrop Financial Co., Inc., Winthrop Securities Co., Inc., Two Winthrop Properties, Inc., Linnaeus–Lexington Associates Limited Partnership, 353 San Francisco Associates Limited Partnership, Arthur J. Halleran, Jr., John M. Nelson IV, David A. Barry, George J. Carter, Carl G. Erickson, David C. Hewitt, John V. McManmon, Jr., Jonathan W. Wexler, Steven E. Wheeler, Thomas C. Wilson, Amy J. Jorgensen, TB Co., and E. Barry Mansur.

David C. Bohan, Jenner & Block, Chicago, Ill., co-counsel for TB Co. and E. Barry Mansur.

Boake Christensen, McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., and Anthony J. Costantini, Associate General Counsel, KPMG Peat Marwick, New York City, for defendant KPMG Peat Marwick (formerly Peat Marwick Main & Co.).

Robert W. Fischer, Jr., Dewey, Ballantine, Bushby, Palmer & Wood, Los Angeles, Cal., for defendants General Elec., General Elec. Pension Trust and Arthur S. Bahr.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT AND MOTIONS TO DISMISS

VUKASIN, District Judge.

### INTRODUCTION

Defendants' Motions for Summary Judgement and Motions to Dismiss were scheduled to be heard on September 5, 1991. Defendants KPMG Peat Marwick ("Peat Marwick") and the Winthrop Defendants [1] moved for summary judgement and for dismissal. Defendants General Electric Company, General Electric Pension Trust ("GEPT"), and Arthur S. Bahr, as trustee of GEPT (the "GE Defendants") moved for summary judgement. After a review of

the briefs, this court considered it appropriate to submit the motion on the pleadings pursuant to Local Rule 220–1, and now GRANTS the motions.

### BACKGROUND

This is a securities class action arising out of the failure of a real estate limited partnership organized by the Winthrop Defendants. Defendant GEPT was the lender which provided financing for the real estate project. Defendant Peat Marwick prepared or participated in the preparation of financial forecasts for the partnership. Plaintiffs, who are investors in the limited partnership, allege that the offering materials prepared by certain of the defendants created a false and misleading picture that the investments in the partnership were safe and secure. The prospectus and offering materials were issued on October 31, 1984. Plaintiffs invested in the partnership in December 1984 and January 1985, each by purchasing one unit in the form of a $100,000, interest bearing, six year note.

Plaintiffs' complaint initially set forth nine claims. They alleged violations of Section 10(b) of the Securities Exchange Act and Rule 10b–5, civil RICO, and various state causes of action. Following motions to dismiss and stipulations, the RICO claim and several state claims were eliminated. The only federal claims remaining are the claims for federal securities laws violations.

Peat Marwick and the Winthrop Defendants move for summary judgement on the grounds that the Rule 10b–5 claims are time barred and for dismissal of the remaining pendant state law claims. The GE Defendants move for summary judgement on the grounds that the evidence produced in discovery is completely inconsistent with all of the plaintiffs' theories of liability.

### THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted where it is shown that there is no genuine

---

1. The "Winthrop Defendants" are First Winthrop Corporation, Winthrop Financial Co., Inc., Winthrop Securities Co., Inc., Two Winthrop Properties, Inc., Linnaeus–Lexington Associates Limited Partnership, 353 San Francisco Associates, Arthur J. Halleran, Jr., John M. Nel-

son IV, David A. Barry, George J. Carter, Carl G. Erickson, David C. Hewitt, John V. McManmon, Jr., Jonathan W. Wexler, Steven E. Wheeler, Thomas C. Wilson, Amy J. Jorgensen, TB Company and E. Barry Mansur.

issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex,* the Supreme Court made it clear that summary judgment, when appropriate, is a favored method of resolution, and that:

> summary judgment is mandated, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

In addition, the Court emphasized in *Anderson* that, under Fed.R.Civ.P. 56(e), "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## DISCUSSION

1. Peat Marwick's and the Winthrop Defendants' Motions.

   a. *Statutes of Limitations.*

   ■ According to *Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson, et al.,* — U.S. —, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991), "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Furthermore, the Court ruled that the limitations period is not subject to the doctrine of equitable tolling. Rather, the three year period is the absolute limit for the institution of the action:

> the 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary.... Because the purpose of the 3–year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

*Id.* The Court further held that this newly adopted statute of limitations applied to the dispute at issue in the *Lampf* case.

The question here is whether the statute of limitations adopted in *Lampf* applies retroactively to this case. *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), provides the answer. In *Beam,* the Supreme Court considered whether to apply retroactively the new constitutional rule it had announced earlier in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). The Court held that "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so.... Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." *James B. Beam Distilling Co.,* 111 S.Ct. at 2446, 2447–48. Under this rationale, it would be error not to apply the *Lampf* one year/three year statute of limitations to this case. Accordingly, because the Supreme Court applied the new one year/three year rule to the litigants in *Lampf* itself, this court must apply it to the case before us.[2]

Applying *Lampf* to this case, plaintiffs' securities claims are time barred. The offering materials were dated October 31, 1984. The plaintiffs invested in the limited partnership in 1984 and 1985. This action was not brought until September 10, 1990, well after three years had elapsed from the time of the defendants' allegedly fraudulent offering of securities.

---

2. Other courts agree that *Lampf* applies retroactively. The Supreme Court vacated *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991), which failed to apply the 1 year/3 year statute of limitations retroactively, and remanded the case for further consideration in light of *Beam* and *Lampf. Northwest Savings Bank, PaSA v. Welch,* — U.S. —, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). On remand the Second Circuit held that the *Lampf* decision applied retroactively and dismissed plaintiffs' claims under 10b–5. *Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991). The Eighth Circuit has also held that *Lampf* applies retroactively. *Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497 (8th Cir. 1991).

The Winthrop Defendants and Peat Marwick are thus entitled to summary judgement on the grounds that plaintiffs securities claims are time barred.

### b. *Motion to Dismiss Pendant Claims.*

In cases where subject matter jurisdiction is premised upon federal claims, federal courts may exercise pendant jurisdiction over related state law claims. If the federal claim is subsequently dismissed, the federal court also has the discretion to dismiss the remaining state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

In the instant case, dismissal of the pendant claims is appropriate. The case is still quite young—it was filed approximately one year ago. Even in cases where the federal court exercised jurisdiction over the state claims for a much longer period than we have here, dismissal of pendant claims has been found proper. *See, e.g., Danner v. Himmelfarb*, 858 F.2d 515, 523 (9th Cir. 1988) (dismissal of pendant state claims proper even though federal court had maintained jurisdiction for three and one-half years). Discovery is far from complete; while the depositions of the GE defendants have been substantially completed, no witnesses from either the Winthrop Defendants or Peat Marwick have been deposed. The court's substantive involvement in the case has been limited to ruling on motions to dismiss and class certification matters. Most of the time that this court has invested in this case has concerned matters of federal law.

Furthermore, the state claims here involve undecided issues of state law that are better left to the state courts to decide. For example, California law is unsettled as to the duties of an independent accountant to third parties such as the plaintiffs. *See, e.g., Bily v. Arthur Young & Co.*, 230 Cal.App.3d 835, 271 Cal.Rptr. 470, *review granted and opinion superseded*, 274 Cal. Rptr. 371, 798 P.2d 1214 (1990); *Mirkin v. Wasserman*, 227 Cal.App.3d 1537, 278 Cal. Rptr. 729 (1991), *review granted and opin-*

*ion superseded*, 282 Cal.Rptr. 840, 811 P.2d 1024 (1991). Where the pendant claims embrace unsettled questions of state law, the proper exercise of discretion is dismissal of the pendant state law claims. *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749, 757 (2d Cir.1986).

Therefore, plaintiffs' pendant claims are dismissed.

### 2. The GE Defendants' Motion.

#### a. *Motion for Summary Judgement on 10b–5 Claims.*

Plaintiffs' 10b–5 claims against the GE Defendants are time barred under *Lampf*. However, because the GE Defendants did not raise this issue, this court finds it necessary to address the merits of the GE Defendants' Motion.

The GE Defendants seek summary judgement on the grounds that the evidence produced in discovery is completely inconsistent with all of plaintiffs' theories of lender liability. There are three theories under which a lender can be held liable under Rule 10b–5: (1) As a principal violator; (2) As a "controlling person" of a principal violator; or (3) As an aider and abettor of a principal violator. *Jett v. Sunderman*, 840 F.2d 1487, 1492 (9th Cir.1988).

#### (1) *Principal Violator Claim.*

To establish a principal violation of Rule 10b–5, the plaintiff bears the burden of proving the defendant was either (1) actually involved in the preparation and dissemination of materials containing misrepresentations or misleading statements, or (2) failed to disclose material facts where the defendant had a duty to disclose. *Jett*, 840 F.2d at 1492. In *Jett*, the court granted summary judgement on behalf of a lender on plaintiff's 10b–5 claim. The court held that the lender could not be held liable as a matter of law for affirmative misrepresentations in the offering materials where it "provided uncontroverted evidence that it was not involved in preparing or distributing the offering materials." *Id.* at 1493.

In the instant case, the GE Defendants made no representations whatsoever to the plaintiffs and they had absolutely no involvement in the preparation of the offering materials. Plaintiffs attempt to show that the GE Defendants were involved in the preparation of the offering materials by pointing to the fact that GEPT's name was on the offering materials. However, the mere presence of GEPT's name on the offering materials does not support the inference that the GE Defendants were involved. *See Wright v. Schock,* 571 F.Supp. 642, 655 (N.D.CA 1983), *affirmed* 742 F.2d 541 (9th Cir.1984).

Plaintiffs also attempt to show that the GE Defendants were involved in the preparation of the offering materials by providing evidence that an investor questionnaire prepared by GEPT was included in the offering materials. However, the questionnaire in no way shows that GEPT had some input in the preparation of the offering materials. Rather, the questionnaire is a necessary step taken by GEPT in order to comply with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1106(a)(1)(B) to ensure that it does not loan money to its affiliates. GEPT could not loan money to a Winthrop entity if Winthrop's partners were going to be entities or individuals associated with GE. GEPT's commitment letter to Winthrop is therefore conditioned on completion of the investor questionnaire establishing that no partner of the borrower is affiliated with GEPT. Thus, the questionnaire does not support the inference that GEPT was involved in the preparation of the offering materials, especially not the portions alleged to be misleading.

Accordingly, plaintiffs are unable to show that the GE Defendants were actually involved in the preparation and dissemination of the materials containing misrepresentations or misleading statements.

Plaintiffs are also unable to show that the GE Defendants failed to disclose material information. Failure to disclose is actionable only when there is a duty to disclose. *Jett,* 840 F.2d at 1493. If plaintiffs and the lender had no prior dealings or preexisting relationship and the circum-stances of the transaction were not such as to create a relationship of trust and confidence, then the threshold requirement of a duty to disclose has not been met. *Id.*

In *Jett,* the court found summary judgement appropriate where the lender submitted declarations that it had no prior relationship with the investors prior to their making the investment and did not participate in the transaction in any way that would induce the investors to rely on the lender to disclose information. The plaintiff offered no evidence of any relationship or prior dealings from which a duty to disclose might arise, but argued that the lender owed him a duty to disclose based on the fact that the lender was aware of the terms of the transaction while he was not. The court found there was no duty to disclose based on these facts. *Id.*

In the instant case, it is undisputed that GEPT had no prior relationship with the plaintiffs; plaintiffs' unsupported allegations that GEPT acted as a general partner in the offering are not sufficient to create such a relationship. Furthermore, under *Jett,* plaintiffs' argument that GEPT was aware of the projections for the partnership does not create a duty to disclose. As a matter of law, plaintiffs have failed to meet the threshold requirement of a duty to disclose. Thus, primary liability cannot be found based on the failure to disclose material facts where there is no duty to disclose.

Therefore, summary judgement for the GE Defendants is appropriate on the issue of primary liability.

(2) *Controlling Person Liability.*

A defendant may be liable as a control person when he controls those who are primarily liable for securities law violations. The SEC has defined control to mean "[t]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract or otherwise." 17 C.F.R. § 230.405. Control person liability attaches only if the defendant had actual power or influence over the allegedly controlled person. *Jett v. Sunderman,* 840 F.2d 1487 (9th Cir.1988).

■ A lender's status as a "major lender" or the standard terms of a loan agreement are insufficient to establish the control that is required to establish controlling person liability. *See Wright v. Schock,* 571 F.Supp. 642, 664 (N.D.Cal.1983) (banks and title companies which provided various routine services to mortgage broker engaged in marketing of promissory notes secured by deeds of trust on real property were not liable as controlling persons).

■ As evidence of control, plaintiffs argue that, under the terms of the loan, GEPT had the right to approve leases, set rental rates, input management contract decisions, control secondary financing, acquire a 50% interest in the partnership, and control the use of the Partnership's Reserve Account. However, such terms in a loan agreement, by themselves, do not sufficiently demonstrate elements of control. It is uncontroverted that these terms are standard loan terms in the industry rather than attempts by GEPT to exert control over the Winthrop Defendants. Accordingly, under *Wright,* these standard loan terms are insufficient to establish control. Furthermore, these facts do not show that GEPT had control over Winthrop at the time of the offering. Rather, at most they may evidence elements of future control. Thus, as a matter of law, plaintiffs have not shown that the GE Defendants had control over the Winthrop Defendants.

■ Additionally, a controlling person is not liable if it can be shown that it "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). *See, Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1575 (9th Cir.1990). Even if plaintiffs had established control, GEPT's good faith creates a defense to liability. GEPT contends that it was unaware of and had no involvement in the offering, while the only evidence presented by plaintiffs that GEPT was involved in the fraud is the investor questionnaire. As discussed above, the questionnaire is insufficient evidence to create a liability, and thus there is no evidence that GEPT directly or indirectly induced the acts constituting the violation.

Defendants are therefore entitled to summary judgement on the issue of control person liability.

### (3) *Aider and Abettor Liability.*

■ In order to prove "aider and abettor" liability, plaintiffs must prove the following:

(1) the existence of an independent primary wrong;

(2) actual knowledge by the alleged aider and abettor of the wrong and of his role in furthering it; and

(3) substantial assistance in the wrong. *Jett v. Sunderman,* 840 F.2d 1487, 1495 (9th Cir.1988).

■ Assuming that there is an independent primary wrong, plaintiffs must first show that the GE Defendants had actual knowledge of the alleged underlying fraud. In this case, the GE Defendants had no knowledge of the alleged fraud; GEPT was unaware of any misrepresentations in the offering materials, was not concerned with the structure of the partnership, and did not review or approve the offering materials containing the alleged misrepresentations.

Plaintiffs attempt to show that GEPT had actual knowledge of the fraud through evidence that GEPT was aware that an offering would take place and that it received projections from Winthrop in connection with the loan application. However, this evidence in no way proves that GEPT knew that the projections were to become a part of the offering materials nor does it show that GEPT saw the offering materials or was aware of what was in the offering materials. *See Wright v. Schock,* 571 F.Supp. 642, 655–56 (N.D.Cal.1983) (bank reviewed financial statements and tax returns in connection with making loans to an alleged perpetrator of fraud and court found no actual knowledge of fraud). Thus, plaintiffs have failed to present specific facts to show that the GE Defendants had actual knowledge of the alleged fraud.

■ Even if plaintiffs were able to show actual knowledge, plaintiffs must also show that the GE Defendants substantially assisted the fraud. To establish substantial assistance, the plaintiff must prove either (1) significant and active, as well as knowing participation in the wrong; or (2) silence combined with a duty to disclose which arises from "knowing assistance of or participation in a fraudulent scheme." *Harmsen v. Smith*, 693 F.2d 932, 944 (9th Cir.1982).

■ In the instant case, the evidence is uncontroverted that GEPT did not actively participate in the fraud. Although plaintiffs attempt to show that GEPT played a role in the project, the evidence in no way shows that GEPT participated in the fraud. The only actions taken by GEPT were loans and related "ministerial" tasks. The mere advancement of loans and performance of ministerial tasks in relation to the loans does not constitute substantial assistance for aider and abettor liability. *See Wright*, 571 F.Supp. at 663 (court found no substantial assistance for performance of ministerial tasks in relation to loans, absent clear proof of intent to aid the fraud). Plaintiff has failed to offer clear proof of an intent of GEPT to aid the fraud, and therefore, the GE Defendants did not substantially assist the fraud.

■ The plaintiffs also attempt to show that the GE Defendants were an active participant through evidence that GEPT's name was on the offering materials. However, this evidence is insufficient to establish active participation. In *Wright*, the court found no liability for a lender whose name appeared on the offering materials of the primary violator where there was no evidence of actual knowledge of and intent to benefit from the fraud. *Wright*, 571 F.Supp. at 663. In this case, plaintiffs have failed to offer evidence that GEPT had actual knowledge of or intent to benefit from the fraud and have thus failed to establish active participation.

■ Since plaintiffs are unable to show that the GE Defendants were an active participant, aider and abettor liability can only be premised on silence. In order to establish substantial assistance based on silence, plaintiffs must show that GEPT had a duty to disclose arising from a "knowing assistance of or participation in the fraudulent scheme." *Harmsen v. Smith*, 693 F.2d at 944. Since plaintiffs have failed to offer sufficient evidence demonstrating that GEPT knew of and participated in the fraud, plaintiffs are unable to show liability based on silence.

Thus, the GE Defendants are entitled to summary judgement on the issue of aider and abettor liability.

b. *Common Law Fraud.*

■ A claim for common law fraud in California requires a plaintiff to prove that the defendant made a false representation, with knowledge of its falsity, intending to induce reliance thereon, and that the plaintiff actually and reasonably relied on the representation, thereby suffering damages. *See Crocker–Citizens National Bank v. Control Metals Corp.*, 566 F.2d 631, 636 (9th Cir.1977). In the securities fraud context, where the defendant does not make any actual misrepresentation to the plaintiff, he cannot be liable for common law fraud as a matter of law. *See In re Gap Stores Securities Litigation*, 457 F.Supp. 1135, 1143 (N.D.Cal.1978).

■ As discussed above, the GE Defendants made no actual misrepresentations to the plaintiffs. It is uncontroverted that the GE Defendants were not involved in the preparation or dissemination of the offering materials. No representative of GE was present at sales meetings or promotions of the limited partnership. Additionally, no representative of GE ever communicated with any of the plaintiffs prior to the investment. Thus, as a matter of law, plaintiffs are unable to prove common law fraud and the GE Defendants are therefore entitled to summary judgement on this issue.

ORDER

In accordance with the foregoing discussion IT IS HEREBY ORDERED THAT:

1. The Winthrop Defendants' and Peat Marwick's Motions for Summary Judgement are GRANTED;

2. The Winthrop Defendants' and Peat Marwick's Motions to Dismiss the pendant claims are GRANTED; and

3. The GE Defendants' Motion for Summary Judgement is GRANTED.

IT IS SO ORDERED.